UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADEN HUSSEN HASSAN,<br><br>              Petitioner(s),<br>   v.<br><br>PAMELA BONDI, et al.,<br><br>              Respondent(s). | CASE NO. C25-2444-KKE<br><br>ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Petitioner Aden Hussen Hassan's motion to amend his petition for a writ of habeas corpus under Federal Rule of Civil Procedure 15 (Dkt. No. 28) and his motion for a temporary restraining order ("TRO") (Dkt. No. 13). Hassan is a citizen and national of Somalia currently detained at the Northwest Immigration Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 2. He suffers from end-stage renal disease and requires hemodialysis treatment three to four times per week. Dkt. No. 2-1; Dkt. No. 2 at 8. Hassan's proposed amended petition seeks to add additional facts, including about his medical condition and the availability of treatment in Somalia, as well as a new claim under the Fifth and Eighth Amendments. *See* Dkt. No. 28-1. For the following reasons, the Court will grant Hassan's motion to amend. The Court will also grant his pending TRO motion in part to prevent his transfer until his amended petition may be adjudicated on its merits.

## I. BACKGROUND

On December 2, 2025, Hassan filed his initial habeas petition under 8 U.S.C. § 2241, challenging his detention under the Immigration and Nationality Act, the Fifth and Eighth Amendments, and other grounds. Dkt. No. 2. Just over a week later, Respondents filed a notice indicating that Immigration and Customs Enforcement ("ICE") had secured travel documents and intended to remove Hassan to Somalia in the near future. Dkt. No. 10. Hassan then moved for a TRO (Dkt. No. 13), which this Court provisionally granted, temporarily prohibiting Respondents from transferring Hassan from this District (Dkt. No. 14). In his TRO motion, Hassan's counsel indicated that Hassan was believed to be scheduled for surgery and requested, among other things, that he be released until adequate arrangements could be made for his safe travel to Somalia and for medical care there. Dkt. No. 13-1 at 2. Respondents filed a combined opposition to the TRO motion and a return to the habeas petition. Dkt. No. 17. The TRO motion is fully briefed. *See* Dkt. No. 21. But rather than filing a traverse to his initial petition, Hassan filed the pending motion to amend or, alternatively, for an extension of time to file his traverse (Dkt. No. 28), which Respondents oppose (Dkt. No. 31). That motion is now fully briefed as well, and both are ripe for consideration.

## II. ANALYSIS

A. **Motion to Amend**

A party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. A court "considers the following five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his [pleading]." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation

amended), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). "The opposing party bears the burden to show why leave to amend should not be granted." *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1047 (N.D. Cal. 2021).

Respondents contend that amendment would cause undue delay and prejudice the Government and that one of Hassan's proposed amendments to the prayer for relief would be futile. Dkt. No. 31 at 4–7. Hassan has not previously amended his petition, and Respondents do not assert bad faith. The Court will consider Respondents' arguments in turn.

To begin, Respondents have not carried their burden to show undue delay. "Alleging new claims based on new information does not cause undue delay, even if some of the facts underlying the new claims were available to [the petitioner] when [he] filed [his] initial complaint." *Story v. Midland Funding LLC*, No. 3:15-CV-0194-AC, 2016 WL 5868077, at *4 (D. Or. Oct. 7, 2016). To support their claim of delay, Respondents argue that Hassan's proposed amendments "rely primarily on information concerning Petitioner's medical history, dialysis treatment, and conditions in Somalia that were either known or reasonably available at the time the petition was filed." Dkt. No. 31 at 5. Hassan, however, points to several key developments and pieces of information that have come to light after he filed his initial petition.

For instance, at the time Hassan filed his petition, Respondents had not obtained a travel document to Somalia—or, at least, had not informed Hassan of this fact—and did not do so until a week later. *See* Dkt. No. 10. Since then, Hassan's counsel has been investigating the issuance of the document and has received communications from an official at the Somali embassy indicating the Somali government would be unable to "cover [Hassan's] needs"—an apparent reference to his need for life-preserving dialysis treatment. Dkt. No. 32 at 5.

Information about Hassan's medical condition has also come to light as his counsel has investigated Hassan's situation on a necessarily condensed schedule. For instance, Hassan

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 3

apparently developed kidney disease while in ICE detention (*see* Dkt. No. 13-2 ¶ 4, Dkt. No. 2 at 7–8), and Hassan's counsel did not learn that he was undergoing surgery related to his condition, or the nature of that surgery, until briefing on the TRO motion (Dkt. No. 13-1 at 2). On December 17, 2025, Respondents filed a declaration by Dr. Eddie Wang, a physician at NWIPC, providing additional information about Hassan's condition and treatment and stating that Hassan could safely travel to Somalia so long as he is given "dialysis one day before his departure[.]"[1] Dkt. No. 19 ¶ 19. Since then, Hassan's counsel has been seeking to verify the information in Dr. Wang's declaration and gather medical records from Hassan's treating medical team to support his challenges to detention. Dkt. No. 32 at 3–4. Indeed, Hassan's counsel has obtained thousands of pages of medical records since the original petition was filed. *Id.* at 4; *see also* Dkt. Nos. 32-1, 32-2. The Court finds no undue delay where Hassan moved to amend just over a month after filing the original petition based, at least in part, on information he could not have known when he initially filed his petition.

As to their claim of prejudice, Respondents argue only that an amended petition would require "reopening briefing that has already closed" and "undermine the expedited schedule ordered by the Court." Dkt. No. 31 at 6. Simply "being forced to respond to an amendment," however, does not "constitute undue prejudice." *Universal Elecs. Inc. v. Roku, Inc.*, No. 8:18-CV-01580-JVS-ADS, 2025 WL 2428473, at *10 (C.D. Cal. July 29, 2025); *see also Corel Software, LLC v. Microsoft Corp.*, No. 215CV00528JNPPMW, 2018 WL 5792323, at *3 (D. Utah Nov. 5, 2018) ("[T]he inconvenience and expense required by additional discovery and briefing of the new issues does not generally rise to the level of *undue* prejudice." (emphasis in original)). Given Hassan's undisputedly dire medical situation and the potential harm or death he might face if his

---

[1] Dr. Wang also explains that, "[f]or continued medical care after removal, arrangements would need to be made for uninterrupted dialysis and other treatment at Petitioner's destination." Dkt. No. 19 ¶ 19.

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 4

condition is inadequately treated, the need for careful consideration of Hassan's claims far outweighs any prejudice Respondents face from a more extended case schedule.

Finally, Respondents contend that one of Hassan's proposed amendments to his prayer for relief seeks to "review or reopen [his] removal proceedings" and is therefore "futile" because this Court lacks jurisdiction to grant such relief. Dkt. No. 31 at 6. On a motion to amend, however, the Court will not evaluate piecemeal the merits of each proposed amendment. *See Mosley v. Stanislaus Cnty.*, No. 2:25-CV-01088-DAD-CSK, 2025 WL 3653644, at *2 (E.D. Cal. Dec. 17, 2025) ("As for futility, 'evaluating the merits of proposed claims is generally inappropriate when considering motions for leave to amend.'") (quoting *Banc of Cal., Inc. v. Farmers & Merchs. Bank of Long Beach*, No. 16-cv-01601-CJC-AFM, 2017 WL 2972338, at *1 (C.D. Cal. Apr. 19, 2017)). The futility analysis looks to whether "*the pleading* as amended could not withstand a motion to dismiss." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 691 (9th Cir. 1993) (emphasis added) (citation omitted). Respondents offer no argument as to the futility of Hassan's other proposed amendments. The Court will therefore defer considering the merits of his amended pleading until it can do so comprehensively in connection with the adjudication of the petition, where the standard of review on appeal would be de novo rather than an abuse of discretion. *See Melendres v. Arpaio*, No. CV07-2513-PHX-MHM, 2008 WL 4174918, at *4 (D. Ariz. Sept. 5, 2008) (declining to resolve "substantive issues" on a motion to amend until "they are squarely presented to the Court in the form of a dispositive motion" to "avoid piecemeal adjudication").

Because Respondents have not carried their burden in opposing Hassan's motion, the Court will grant leave to file an amended petition.

**B.  Temporary Restraining Order**

The Court will also grant Hassan's motion for a temporary restraining order, in part, so as to maintain the status quo until the issues raised in the amended petition can be fully resolved. The

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 5

legal standard governing TROs is "substantially identical" to that governing preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Parties seeking a TRO must show: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Thus, under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits … and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003)).

Here, the Court finds that Hassan has demonstrated a compelling likelihood of irreparable harm absent a TRO preventing his removal from this District because, without dialysis treatment, he will die. *See* Dkt. No. 21 at 2. Indeed, Dr. Wang, ICE's physician at NWIPC, agrees that Hassan's "continued medical care after removal" requires "arrangements" to "be made for *uninterrupted* dialysis and other treatment at Petitioner's destination." Dkt. No. 19 ¶ 19 (emphasis added). Yet Hassan has submitted evidence indicating that Somalia has extremely limited access to renal replacement therapy, which includes hemodialysis and dialysis.[2] *See* Dkt. Nos. 21-1, 21-2. There can be no doubt that "pain, … medical complications, and death due to delayed treatment" all constitute "irreparable harm[.]" *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004). Indeed, at least one district court in the Ninth Circuit has found a likelihood of delay in receiving

---

[2] *Renal Replacement Therapy (RRT),* Yale Medicine, https://www.yalemedicine.org/clinical-keywords/renal-replacement-therapy (last visited February 5, 2026).

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 6

dialysis sufficient to establish the requisite risk of irreparable harm. *D.W. v. Fresenius Med. Care N. Am.*, 534 F. Supp. 3d 1274, 1287–88 (D. Or. 2021).

The Court also finds that Hassan raises serious questions going to the merits of his claims. For instance, while Dr. Wang's declaration states that Hassan can safely make the undoubtedly multi-day flight to Somalia (if given dialysis immediately before and after), Hassan raises substantial questions about Dr. Wang's qualifications to make such an assessment. For instance, Hassan contends Dr. Wang is not a nephrologist (i.e., a kidney specialist), has never personally treated Hassan, and apparently based his assessment on medical records that have not been provided to Hassan's counsel or the Court. Dkt. No. 21 at 2. Hassan's contention that he cannot be safely detained throughout a flight to Somalia raises at least a serious question about whether ICE is complying, or intends to comply, with its obligation under "[t]he Fifth Amendment … to provide conditions of reasonable health and safety to people in its custody." *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020). And if such a flight could not lawfully occur, Hassan raises a further serious question as to whether there is any "significant likelihood of" his "removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

The final two *Winter* factors—the balance of the equities and the public interest—also weigh in Hassan's favor. The potential harm an injunction would cause to Respondents' ability to manage their detention facilities is far outweighed by Hassan's potential harm without injunctive relief. Moreover, the public interest is served by ensuring careful consideration of credible claims that an individual in federal detention may be unlawfully deprived of life-preserving medical treatment.

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 7

Because Hassan has shown that he is entitled to a TRO to prevent his transfer or removal from this jurisdiction, the Court will grant his TRO motion in part.[3]

### III.  CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Hassan's motion for leave to file an amended habeas petition is GRANTED.  Dkt. No. 28.  Hassan is ORDERED to file his amended petition no later than February 9, 2026.

(2) Hassan's motion for a temporary restraining order is GRANTED in part.  Dkt. No. 13.

    a. Respondents ARE PROHIBITED from removing Hassan from the United States or this jurisdiction—i.e., the Western District of Washington—without further order of this Court.

    b. The portion of this Order granting Hassan a temporary restraining order shall expire on February 20, 2026, unless extended by this Court.

(3) The parties are ORDERED to contact the Courtroom Deputy at kkecrd@wawd.uscourts.gov to schedule a status conference, which the Court will hold via Zoom.  At the conference, the Court and the parties will discuss an appropriate briefing schedule on the amended petition in light of the distinctive issues raised in this case and the schedule for any additional hearing, including an evidentiary hearing, if needed.

Dated this 6th day of February, 2026.

*Kymberly K Evanson*

Kymberly K. Evanson
United States District Judge

---

[3] At this time, the Court concludes that a TRO enjoining Respondents from removing Hassan from this District is sufficient to protect against the alleged imminent risk of irreparable harm here.  Therefore, the Court will not grant the TRO motion insofar as it seeks immediate release from custody.

ORDER GRANTING MOTION TO AMEND HABEAS PETITION AND GRANTING IN PART MOTION FOR A TEMPORARY RESTRAINING ORDER - 8